ESTATE OF David FUENTES, By and Through Administrator, Ulises Cerca FUENTES; Ulises Cerca Fuentes, Iris Cerca Fuentes, David Fuentes, and Dario Fuentes (minor children, by and through their friend and mother), Maria De Jesus Cerca, Plaintiffs,

v.

Dave THOMAS; Randy Listrom, Robert W. Youse, Troy Willard, Daniel Breci, Jason Cooper, Kurt Richter, Russell Klumpp, Doug Bane, Dean Forster, City of Topeka Law Enforcement Personnel, each in their individual capacities; and the City of Topeka, Defendants.

No. Civ.A. 98–2408–CM.

United States District Court,
D. Kansas.

June 27, 2000.

Henry O. Boaten, Topeka, KS, for Maria De Jesus Cerca.

James S. Pigg, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Dave Thomas, City of Topeka Law Enforcement Personnel and City of Topeka, Kansas.

Deanne Watts Hay, Stanley R. Parker, Parker & Hay, LLP, Topeka, KS, for Randy Listrom.

Ann L. Hoover, Clutter, Hinkel & Aadalen, LLP, Topeka, KS, for Dean Forster.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

This case arises from facts surrounding the execution of a search warrant by members of the Topeka, Kansas, Police Department at the residence of the decedent, David Fuentes, in the evening hours of August 26, 1997. The matter is before the court on the defendants' motions for summary judgment. (Docs. 85, 93 & 95). The court grants the motions for summary judgment in part as explained below.

David Fuentes was fatally injured during the execution of the warrant, and his administrator and his minor children have sued the City of Topeka as well as several members of the Police Department and the Chief of Police in their individual and official capacities. In Count I, plaintiffs allege liability of the individual defendants under 42 U.S.C. § 1983 for constitutional deprivations by excessive force, unreasonable search, deprivation of the life and liberty of the decedent and, deprivation of parental support of the minor plaintiffs. In Counts III and IV, plaintiffs assert state law claims of negligent infliction of emotional distress and wrongful death against the individual defendants. Plaintiffs assert liability of the city in Count II for constitutional deprivations caused by its failure to train or supervise, by permitting a policy or practice of unreasonable force, and by allowing unreasonable searches.

### I. Facts

The court notes considerable controversy as to the facts. Each motion contains a numbered statement of facts which the plaintiffs have attempted to controvert at

various points in their responsive memoranda. Plaintiffs included "Plaintiff's Statement of Uncontroverted Facts" in two of their responsive memoranda, but in their response to defendant Sergeant Randy Listrom's motion, plaintiffs incorporated statements made in response to the other motions. (Pls.' Resp. to Def. Listrom's Mot. at 4). The statement of facts contained in both of plaintiffs' responses are essentially the same except that the statement in response to the city's motion contains additional statements inserted as numbers 49 and 50, and numbered 59 through 65. (*Compare* Pls.' Resp. to Def. Forster's Mot. at 2–11 *with* Pls.' Resp. to Def. City's Mot. at 8–19). For clarity, the court will refer to the numbers of the statements from the plaintiffs' response to the city's motion.

Much of the plaintiffs' attempts to controvert defendants' facts and to state additional facts precluding summary judgment is unsupported by the record, fails to refer to the record with the particularity required by Rule 56, and consists of argument, speculation, explanation, conclusory assertions concerning the facts, or legal conclusions. Accordingly, such "statements" have not been considered by the court in ruling on the present motion.

Moreover, defendants, in several instances where the plaintiffs' citations are by Bates numbers, argue that plaintiffs have failed to properly cite to the record in accordance with Rule 56(e). The defendants' argument is unclear. If defendants argue that the portion of the record cited is unidentifiable, the court has considered those portions of the record it could identify and ignored the alleged facts where the

court could not find support in the record. If defendants attempt to argue that the portion of the record cited is documentary evidence, which is not properly supported or would not be admissible at trial, they have failed to specify in what way the documents are not properly supported or how their admission is objectionable. Where the court could identify the record cited, the court has considered it. The facts stated below are those identified with particularity as required by Rule 56 and viewed in the light most favorable to the plaintiffs.

Two Topeka narcotics officers, Corporal Chapman and Officer Hill, in the course of a narcotics investigation, had been informed by a confidential informant[1] that a Hispanic male named David was selling cocaine from a residence at 724 Southeast Branner. The confidential informant had made a controlled purchase of cocaine from David and had advised the officers that David carried a gun and that David had brandished it toward the confidential informant during a previous argument.

The officers conceived a plan whereby the informant would make a controlled purchase of a relatively large amount of cocaine from David. The officers expected that David would go to his stash house to get the cocaine. According to the plan, officers would follow David to determine the location of his stash house, would make a traffic stop of David on his way home from the stash house, and would secure search warrants for both the stash house and David's residence. The plan involved members of the Topeka Police Department's Drug Enforcement Unit, Street

---

1. Plaintiffs attempt to controvert information provided by the confidential informant. "Information depends on the reliability of the confidential informant whose credibility and identity has not been revealed." (Pls.' Resp. to City's Mot. at 3, ¶ 18). The plaintiffs' argument is without citation to the record, and does not provide any facts from which the court might infer a genuine issue of material fact. To the extent the plaintiffs are arguing that the information provided by the informant is inadmissible as hearsay, they do not

make the argument in their memorandum, nor do they cite to any authority for that proposition. The standard applicable to qualified immunity and search and seizure issues is whether the officers' actions were objectively reasonable in light of the facts and circumstances. Information provided by the informant constitutes part of the circumstances under which the court must evaluate the officers' actions. Therefore the court accepts that the defendants' were aware of the "facts" provided by the confidential informant.

Crime Action Team, and Anti–Crime Team,[2] the Kansas Alcohol Beverage Control, the Kansas Army National Guard Counter Drug Special Operations Group, and a United States Drug Enforcement Agency Special Agent.[3]

Some members of the operation, including defendant Sgt. Listrom, the tactical commander of the operation, were briefed at an operational briefing at 1:00 p.m. on August 26, 1997. Other members of the operation were briefed at a staging area at 2:45 p.m. During the briefings, the members were informed that an individual at the 724 Southeast Branner residence had been known to carry handguns and had threatened another person with a handgun in the past. At some point during the afternoon, members of the National Guard Counter Drug Special Operations Group surveillance team notified the officers at the staging area that a male subject was seen in the backyard of 724 Southeast Branner with what appeared to be a pellet or BB rifle.

At about 3:40 p.m., the confidential informant had a meeting with David at which David took $2,700 from the informant and told him to come back in an hour. At approximately 5:00 p.m., Officer Hill met with the informant and followed him back to the residence at 724 Southeast Branner. Driving by the alley of 724 Southeast Branner, Officer Hill observed part of the meeting between the informant and an Hispanic male, later identified as David, during which David handed something to the informant. Officer Hill then followed the informant back to a pre-arranged meeting location. The confidential informant handed Officer Hill a plastic cup containing approximately three ounces of cocaine and informed Officer Hill that David had handed him the cup of cocaine.

A search warrant authorizing search of the 724 Southeast Branner residence was signed by a state judge at 6:10 p.m. After receiving notification that the warrant had been signed, defendant Corporal Dave Thomas lined the entry team up where he wanted them to sit in the raid van. Cpl. Thomas verified that all had their flashlights, and stated that once the team hit the door everyone was to continue to yell, "police, search warrant."

The team left the staging area in three vehicles. The entry team, consisting of defendants Cpl. Thomas, Officer Robert W. Youse, Sgt. Listrom, Off. Troy Willard, Off. Daniel Breci, and Off. Jason Cooper, were in a police department van. Following the police van was an Alcohol Beverage Control van containing two Alcohol Beverage Control Agents and defendants Sergeant Kurt Ritcher, Off. Dennis Bane, and Off. Russell Klumpp. The third vehicle contained two members of the Counter Drug Special Operations Group. The occupants of the second and third vehicles were to maintain the perimeter of the residence.

Upon arriving at the residence, the entry team approached the closed front door of the residence. Off. Willard carried a ram to break the door. Before Off. Willard struck the door, Sgt. Listrom began yelling "police, search warrant." As Off. Willard hit the front door with the ram, the entry team began yelling "police, search warrant.[4]" Eventually the door gave way, fell into the house, and Off. Willard tossed the ram into the house. Continuing to yell, the officers entered the house.

---

**2.** It is not clear from the parties' memoranda, but the Street Crime Action Team and the Anti–Crime Team may be the same unit. Any difference or similarity is irrelevant to the issues here.

**3.** The DEA special agent's participation my have consisted solely of being briefed about the plan.

**4.** Plaintiffs controvert whether "the shouting was intended to be heard by the occupants of the dwelling." (Pls.' Resp. to City's Mot. at 6, ¶¶ 51, 52). Plaintiffs do not, however, deny that the officers shouted. The court finds a no-knock entry because the officers did not wait for the occupants to open.

Cpl. Thomas entered first, carrying a ballistic shield, followed by defendants, Off. Youse, Sgt. Listrom, and Offs. Willard, Breci, and Cooper. The officers proceeded through two rooms of the house without encountering any residents. The third room was the kitchen. Cpl. Thomas entered the kitchen followed by Off. Youse and Sgt. Listrom. The kitchen was unoccupied, and Cpl. Thomas proceeded through the kitchen toward a doorway from the kitchen to a hall in the back of the house.

While the officers were proceeding through the house, the decedent, David Fuentes, and another man, Raul Puente, were in the hall at the back of the house between the kitchen and the back door to the house. David Fuentes ran down the hall, grabbed a gun and ran back toward the kitchen doorway. As Cpl. Thomas approached the doorway, he encountered David Fuentes coming around a corner of the hallway about six or seven feet from Cpl. Thomas. Cpl. Thomas first saw David Fuentes's left hand holding a black, semi-automatic pistol at an angle toward the ground. As David Fuentes came around the corner, Cpl. Thomas saw the gun come up pointing at Cpl. Thomas.[5] Cpl. Thomas fired his weapon three times, David Fuentes stepped back down the hall where Cpl. Thomas could not see him completely, and fell to the hallway floor in a position in which Cpl. Thomas could see only his foot sticking around the corner. The coroner's report reveals that David Fuentes died from the gunshot wounds received and that one wound entered in his back moving "from back to front, left to right and upward to an exit at the left nipple." (Coroner's Report at 3).

Defendants assert that Cpl. Thomas fired three shots in rapid succession, however, the plaintiffs cite to testimony by Raul Puente for the proposition that the third shot occurred about fifteen seconds after the first two shots. In context, Mr. Puente's testimony concedes that the third shot occurred about five seconds after the first two. (Raul Puente Depos. p. 122, l. 4 – p. 126, l. 3). Sgt. Listrom testified that he heard all three shell casings ejected from Cpl. Thomas's gun hit the floor **after** the third shot was fired. Three officers testified that all three shots were fired in rapid succession between three-quarters of a second and one-and-a-half seconds. The court finds a question of fact as to whether Cpl. Thomas fired the shots in rapid succession, or fired the third shot several seconds after the first two shots. Therefore, a rational fact finder could determine from the evidence presented that Cpl. Thomas did not cease firing as soon as he no longer perceived a threat from David Fuentes.

After the shooting, the Use of Force Review Committee was activated to review the incident. Within twenty-four hours, Deputy Chief Klumpp, head of the Use of Force Review Committee gave a verbal report to defendant Chief Dean Forster clearing Cpl. Thomas. Chief Forster ratified the findings of the Committee. Chief Forster did not personally participate in any of the events occurring at 724 Southeast Banner, nor was he present at the scene. The Topeka Police Department had in place a policy on the use of lethal force which was contained in General Order O04 and which adopted Kan.Stat.Ann. § 21–3215 as part of the city's policy.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving parties, defendants here, demonstrate that there is "no genuine issue as to any material fact" and that they are "enti-

---

5. Plaintiffs attempt to controvert this fact by asserting: "When the decedent observed the police shield he was already turning away from defendant Thomas." (Pls.' Resp. to City's Mot., ¶ 68 at 6–7). The record does not show that the decedent saw the police shield at all, much less that he was already turning away when he saw the shield. The portion cited gives the plaintiffs' expert's opinion that the decedent was turning away from Cpl. Thomas when the decedent was shot, but does not address whether the decedent had raised his hand and pointed the gun at Cpl. Thomas before he was shot.

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affida-vits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Constitutional Claims of Individual Minor Plaintiffs; Ulises Cerca Fuentes, Iris Cerca Fuentes, David Fuentes, and Dario Fuentes

#### A. Standing

■ Standing to assert a § 1983 claim requires the plaintiff to assert the violation of a constitutional or statutory right personal to the plaintiff. *See Archuleta v. McShan,* 897 F.2d 495, 496–97 (10th Cir. 1990); *Trujillo v. Board of County Comm'rs,* 768 F.2d 1186, 1187–88 (10th Cir.1985); *Dohaish v. Tooley,* 670 F.2d 934, 936 (10th Cir.1982). Defendants argue, and plaintiffs do not deny, that the claims alleging excessive force and violation of Fourth Amendment rights do not allege violations of constitutional rights personal to the minor plaintiffs. The court agrees. The conduct alleged constitutes a violation, if at all, of the rights of the decedent and may be asserted only by the estate of the decedent. *See Berry v. City of Muskogee,* 900 F.2d 1489, 1506–07 (10th Cir.1990).

■ Plaintiffs, however, allege that the defendants have violated the minor plaintiffs' constitutional right of familial association. Defendants counter that a claim based upon the right of familial association was not previously presented in this case. The court disagrees. In the Amended Complaint, plaintiffs claim "the individually named defendants intentionally ... cause[d] Plaintiffs to be deprived of their constitutional rights ... by: ... d .... denying Plaintiffs loss of parental support (sic) by fatally shooting and killing their father." (Amended Complaint, ¶ 26 at 6–

7). Interpreting the pleadings liberally in favor of the non-movant, the court finds that the plaintiffs have alleged an intentional violation of the individual minor plaintiffs' personal constitutional right of familial association.

Children have standing to assert deprivation of the constitutional right of familial association. *See Trujillo*, 768 F.2d at 1187–89. Therefore, the court finds that the individual minor plaintiffs have standing to assert deprivation of their personal constitutional right to familial association by the defendants' killing of their father, but do not have standing to assert claims based upon Fourth Amendment rights or allegations of excessive force.

### B. Analysis of Familial Association Claim

▇▇▇ To state a claim under § 1983 for deprivation of the constitutional right to familial association, plaintiffs must establish the defendants "inten[ded] to interfere with a particular relationship protected by the freedom of intimate association." *Id.* at 1190. Intent with respect to the rights of the decedent may not be transferred to establish intent to deprive the decedent's minor children of their constitutionally protected rights. *See id.* Plaintiffs point to no evidence which would raise an inference that the defendants had any intent to interfere with the family relationship between the decedent and the individual minor plaintiffs.

Plaintiffs argue that the defendants were aware (or should have been aware) there were minor children on the premises. (Pls.' Resp. to Def. Listrom's Mot. at 10). Plaintiffs base their argument upon the supposition that the 724 Southeast Branner residence had been under surveillance since the late morning of August 26, 1997. Plaintiffs, however, cite to no evidence to indicate either that the defendants were aware minor children were on the premises or that the residence had been under surveillance since the late morning. Knowledge that minor children were on the premises does not equate to knowledge of a family relationship between the children and the decedent, much less to an inference of intent to deprive the children of their constitutionally protected right to familial association with the decedent. Plaintiffs point to no evidence relating to the intent of the defendants with respect to the individual minor plaintiffs. Therefore, the court finds that plaintiffs have failed to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. All § 1983 claims of the individual minor plaintiffs are dismissed with prejudice.

### IV. Claims Against Individual, Non–Supervisory Defendants: Dave Thomas, Robert W. Youse, Troy Willard, Daniel Breci, Jason Cooper, Kurt Ritcher, Russell Klumpp, and Dennis Bane

Plaintiffs claim that the non-supervisory defendants are liable in their individual and official capacities under § 1983 for constitutional deprivations to the decedent caused by the actions of the non-supervisory defendants in executing the search warrant and using excessive force against the decedent. Defendants claim that they are entitled to qualified immunity because their actions did not violate a clearly established constitutional right of the plaintiffs and their actions were objectively reasonable.

### A. Standard for Qualified Immunity

▇▇ Where the defendants assert qualified immunity as an affirmative defense, "the plaintiff[s] initially bear[ ] a heavy two-part burden." *Romero v. Board of County Comm'rs,* 60 F.3d 702, 704 (10th Cir.1995) (*quoting Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir.1995)). The plaintiffs must show (1) "that the defendant[s'] actions violated a constitutional or statutory right" and (2) that the right "allegedly violated [was] clearly established at the time of the conduct at issue." *Id.* Plaintiffs must articulate with specificity the clearly established constitutional right

violated and the defendants' conduct which violated that right. *Id.*

The Supreme Court has recently stated that the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.

*Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998) (*citing County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998)).

If the plaintiffs show a constitutional deprivation but fail to show that the "right was clearly established such that a reasonable person in the defendant[s'] position would have known that his or her conduct violated that right," *Tonkovich,* 159 F.3d at 516, qualified immunity is proper. If the plaintiffs meet their burden, "then the defendant[s] bear[ ] the burden, as [ ] movant[s] for summary judgment of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Romero v. Board of County Comm'rs,* 60 F.3d at 704 (*quoting Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995)). Plaintiffs' claims of unreasonable search and excessive force must be analyzed under the Fourth Amendment's reasonableness standard. *See id.* (excessive force claim analyzed under reasonableness standard).

**B. Warrantless Search**

■ Plaintiffs first argue that the individual defendants' conduct violated the decedent's clearly established constitutional right to be free from a warrantless search of his dwelling. Plaintiffs allege that the officers initiated the search before the warrant was signed. This argument is based upon the plaintiffs' assertions of conflicting times regarding the signing of the warrant at issue, the time the officers left the staging area, the time the officers entered the residence at 724 Southeast Bran-

ner, and the time that the Emergency Medical Service log reflects a call received from the residence regarding the shooting. The warrant reflects that it was signed at 6:10 p.m. (City's Mot. for Summ.J., Attch. 16). Plaintiffs argue that the Emergency Medical Service ambulance run report indicates that the call regarding the shooting at 724 Southeast Branner was received at the ambulance service at 6:20 p.m. (Pls.' Resp. to Def. City's Mot. at 5). In support of this assertion, plaintiffs cite to Ex. 3 of the deposition of their expert, however, they have not provided a copy of the exhibit or of the ambulance run report. The court will assume the report shows the call was received at 6:20 p.m. because the defendants appear to accept that the report reflects that time. (Def. City's Resp. at 3–4). Plaintiffs also point to differing testimony from numerous defendants as to the time various activities occurred with relation to the raid: Officers at the staging area were informed that the warrant had been signed; at 6:10, (Breci Affidavit, ¶ 16); 6:05 (Thomas Depos., p. 66, ll. 11–21) and; shortly after 6:00, (Listrom Depos. pp. 27–28). The raid team departed the staging area; at 6:14, (Breci Affidavit, ¶ 17) and; "[a]round" 6:18 (Youse Affidavit, ¶ 9) ("we started in route"). At 6:19 the raid teams passed the north-south alley behind the 724 Southeast Branner residence. (Breci Affidavit, ¶ 19). At approximately 6:20, both vans arrived at the front and rear of the house. (Sgt. Richter Affidavit, ¶ 17).

Based upon these differing reports of the time involved, the fact that it took five or six blows to knock the door down, and Sgt. Listrom's testimony that the entry was "slow and deliberate" and "dynamic," plaintiffs argue that it would have been impossible for the defendants to have waited until after the warrant was signed and still complete all the activities alleged before the shooting at 6:20 p.m. Plaintiffs do not produce evidence, other than by implication, that any of the testimony is wrong or fabricated. In fact, they admit that the entry team practiced positions in the raid

**1298**

van "[a]fter receiving notification the warrant had been signed and prior to leaving the staging area." (Mem. in Support of City's Mot., ¶ 35 at 8); (Pls.' Resp. to City's Mot., ¶ 35 at 4). The only evidence of time which is in direct conflict is the allegation that the ambulance call was made at 6:20 and the allegation that the vans arrived at the front and back of the residence at 6:20 p.m.

What plaintiffs overlook in making their argument is that there is no single standard which was, or could have been, applied to each reported time. Plaintiffs present no evidence that the police officers' watches were synchronized. There is **no** basis from which to infer that the officers' watches were synchronized with the timepieces of the court or the ambulance service. Plaintiffs do not present any testimony that the search was begun before the warrant was signed, or before the officers had been informed that it was signed. Plaintiffs present no evidence from which a trier of fact could infer that the defendants fabricated their stories. Plaintiffs admit that the officers practiced positions in the raid van after receiving notice the warrant was signed. No rational trier of fact could find from the evidence presented that the officers executed the search before the warrant was signed. Therefore, the court finds the plaintiffs have failed in their burden to show that the timing of the defendant's actions violated a constitutional right pursuant to the Fourth Amendment.

**C. No–Knock Entry**

■ Plaintiffs next argue that the defendants violated decedent's clearly established constitutional right against unreasonable searches by executing the search warrant without exigent circumstances which would justify the no-knock entry. The knock and announce principle of common law is a factor to be considered in a court's inquiry into the reasonableness of a search under the Fourth Amendment. *See Wilson v. Arkansas,* 514 U.S. 927, 930, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion

that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime." *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). Reasonable suspicion, although it is not a high standard, strikes the appropriate balance between the individual privacy interests affected by a no-knock entry and the legitimate law enforcement concerns at issue in execution of search warrants. *Id.*

■ Plaintiffs imply in their arguments that the defendants should have secured a "no-knock" authorization from the judge who issued the warrant. Plaintiffs do not cite, and the court could not find, any authorization within the law of Kansas which would allow such a "no-knock" warrant. Kan.Stat.Ann. §§ 22–2501 *et seq.* Furthermore, if Kansas law allowed such a warrant, that fact would not be determinative of whether a "no-knock" entry would be authorized in this case. Even if the law allowed such a "no-knock" warrant, a magistrate's decision not to authorize it in a particular case would not necessarily preclude the officers' exercise of judgment to make a "no-knock" entry. *See Richards* at 395–96 and n. 7, 117 S.Ct. 1416. The constitutional inquiry is the reasonableness of the officers' decision evaluated as of the time they made the entry. *See id.*

■ Here, the officers had information that a resident of the property to be searched was known to carry a handgun and had previously threatened someone with a handgun. The officers knew that the same resident was present in the residence when the search was executed. The officers had been told that a male subject had been seen on the day of the search in the back yard of the residence with what appeared to be a pellet or BB rifle. Plaintiffs argue that the information about the pellet or BB rifle does not support a reasonable suspicion that it would be dangerous for the officers to knock and announce before making their entry. Plaintiffs fail

to acknowledge the significance of the phrase "**appeared** to be a pellet or BB rifle." Pellet or BB rifles may be injurious and many true rifles "appear" only to be pellet or BB rifles. The court finds under the particular circumstances of this case that the defendant officers had a reasonable suspicion to believe that knocking and announcing their presence before entering would be dangerous. Therefore, a "no-knock" entry was objectively reasonable and justified. Plaintiffs have failed to present evidence which could establish deprivation of any Fourth Amendment rights.

### D. Excessive Force

Plaintiffs argue that the individual, non-supervisory defendants violated the decedent's clearly established constitutional rights by their use of excessive force.

1.  *Defendants Robert W. Youse, Troy Willard, Daniel Breci, Jason Cooper, Kurt Richter, Russell Klumpp, and Doug Bane*

■ The uncontroverted facts indicate that the decedent died as a result of the gunshot wounds inflicted by Cpl. Thomas. Plaintiffs allege that Cpl. Thomas used excessive force by shooting decedent although decedent presented no threat to his safety and by failing to cease fire when the decedent began to retreat. Other than allegations that the individual defendants executed a search without a warrant and/or made a "no-knock" entry which was not justified by exigent circumstances, plaintiffs identify no conduct by the individual defendants other than Cpl. Thomas which might constitute excessive force.

The court has found that the search was executed pursuant to a warrant and that the "no-knock" entry was objectively reasonable and justified in the circumstances. Plaintiffs have failed in their burden to articulate with specificity conduct by the individual defendants other than Cpl. Thomas which violated their clearly established constitutional right to be free from excessive force. Therefore, the court finds that the plaintiffs have not shown deprivation of a constitutional right by any of the individual, non-supervisory defendants, Robert W. Youse, Troy Willard, Daniel Breci, Jason Cooper, Kurt Richter, Russell Klumpp, and Doug Bane, and all such claims are dismissed with prejudice. Because the court finds no Fourth Amendment violation in the conduct alleged, any Fourth Amendment claims against the supervisory defendants, Sgt. Randy Listrom and Chief of Police Dean Forster, and against the City of Topeka asserting supervisory liability or municipal liability under 42 U.S.C. § 1983 are also dismissed with prejudice.

2.  *Individual Defendant Cpl. Dave Thomas*

■ Cpl. Thomas argues that it was objectively reasonable in the circumstances for him to use deadly force on the decedent because the decedent had a gun in his hand which decedent raised and pointed toward Cpl. Thomas. Cpl. Thomas further argues that the number of times he fired was objectively reasonable in the circumstances because he ceased his use of deadly force as soon as he perceived that the threat was abated.

The uncontroverted evidence is that the decedent raised his gun and pointed it at Cpl. Thomas. Plaintiffs present evidence that the decedent was turning away when he was struck by a bullet. Where a police officer is aware that a resident of a house has been known to carry a weapon and has threatened individuals with the weapon in the past; where the officer is lawfully in the residence of that person to execute a search warrant pursuant to a drug investigation; where the officer shouts, "Police, search warrant;" and where an individual in the residence is carrying a gun in his hand, has encountered the police officer, and has raised the gun and pointed it at the officer, the court finds that it is objectively reasonable for the officer to use deadly force to protect himself and the other officers in the residence.

██ The uncontroverted evidence is that defendant Cpl. Thomas fired his weapon three times toward the decedent. Plaintiffs have provided evidence indicating that the decedent was struck in the back by a bullet traveling "from back to front, left to right and upward to an exit at the left nipple." (Coroner's Report at 3). Plaintiffs present evidence that the decedent dropped his weapon when he was struck by the first bullet, and argue that decedent "was in a surrender position and was turning around when he was shot." (Pls.' Resp. to City's Mot. at 29). The court has found a question of fact whether Cpl. Thomas fired the shots in rapid succession, or fired the third shot several seconds after the first two shots. (*Supra* at 8). The court cannot find that Cpl. Thomas's actions were objectively reasonable because the evidence, viewed in the light most favorable to plaintiffs, is such that a rational fact-finder could infer that the defendant fired the third shot after the threat was abated. Because Cpl. Thomas has not shown that his actions were objectively reasonable, he is not qualifiedly immune to prosecution. Therefore, defendants' summary judgment motion is denied as it relates to plaintiffs claims that defendant Cpl. Thomas violated plaintiffs' constitutional rights through use of excessive force.

## V. Claims Against Supervisory Defendant Sgt. Randy Listrom

The court has dismissed all of the plaintiffs' claims based upon familial association and violation of the Fourth Amendment. The court has also dismissed any claims against defendant Sgt. Listrom predicated upon allegations of excessive force by the individual defendants other than Cpl. Thomas. The court now considers whether the plaintiffs may assert claims against defendant Sgt. Listrom as supervisor of Cpl. Thomas based upon allegations of excessive force by defendant Cpl. Thomas.

██ Vicarious liability or respondeat superior does not apply under § 1983. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 n. 58,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Under § 1983, a supervisor is only liable if the plaintiffs show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (*quoting Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988)).

██ The uncontroverted facts of the case preclude a finding of personal participation in the conduct alleged to constitute excessive force by any defendant except Cpl. Thomas. Therefore, Sgt. Listrom may only be liable for constitutional deprivations if the plaintiffs show an affirmative link between the use of excessive force by Cpl. Thomas and control, direction, or supervision by Sgt. Listrom. Plaintiffs do not controvert Sgt. Listrom's statements of fact: "After going through the first two rooms, and while still behind Officers Thomas and Youse, Defendant Listrom observed Thomas kneel down at the entrance to a hallway, and then heard three shots in rapid succession.... The first time that defendant Listrom saw David Fuentes (now the decedent) was after the shots had been fired and Fuentes was lying on the floor." (*See* Def. Listrom's Mem. for Summ.J., ¶¶ 16, 17, at 4; *and* Pls.' Resp. to Listrom's Mot., ¶¶ 16, 17, at 3). Plaintiffs present no evidence that Sgt. Listrom ordered or in any way indicated to Cpl. Thomas that he should shoot the decedent. Plaintiffs present no evidence that Sgt. Listrom could have intervened to prevent the shootings. Plaintiffs present no evidence that Sgt. Listrom could or should have intervened between the second and third shots to prevent Cpl. Thomas's alleged application of excessive force. Plaintiffs, in response to a summary judgment motion, may not rest on their pleadings but must come forward with evidence to support the allegations of the pleadings. Plaintiffs here have failed in their burden. The court finds that the plaintiffs have presented no evidence to

establish an affirmative link between the alleged constitutional deprivations and any actions or failures of Sgt. Listrom. Therefore, Sgt. Listrom is not liable under § 1983, and all such claims are dismissed with prejudice.

## VI. Section 1983 Claims Against Supervisory Defendant Police Chief Dean Forster

The court's rationale with reference to the supervisory liability of defendant Sgt. Listrom applies equally to the supervisory liability of defendant Chief Dean Forster. The supervisor is only liable if the plaintiffs show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green,* 108 F.3d at 1302 (*quoting Meade,* 841 F.2d at 1527). Therefore, the court finds no direct participation or supervisory liability on the part of Chief Forster for the events occurring on August 26, 1997.[6]

However, the plaintiffs allege § 1983 liability because of defendant Chief Forster's "failing to train, discipline and his total indifference of the conduct of the officers under his command." (Pls.' Resp. to Forster's Mot. at 12). Supervisory liability under § 1983 must be based upon the supervisor's deliberate indifference, rather than mere negligence. See *Green,* 108 F.3d at 1302. Plaintiffs may show deliberate indifference by showing a deliberate, conscious choice or by showing that the need for different training or more supervision "is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Warner v. Grand County,* 57 F.3d 962, 967–68 (10th Cir.1995) (*quoting City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

The parties cite to a case from the First Circuit with circumstances similar to this case. In *Febus–Rodriguez v. Betancourt–Lebron,* the court states the rule that reckless and callous indifference is shown "when it should be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 92 and n. 4 (1st Cir. 1994) (no difference between "deliberate indifference" and "reckless and callous indifference"). That court recognized that an "affirmative link" must be shown between the supervisor's actions or omissions and the constitutional deprivations. *See id.*

In *Betancourt,* a mentally retarded arrestee sued the police superintendent, Betancourt, alleging supervisory liability under § 1983 after he was severely beaten by police officers and denied medical treatment in deprivation of his constitutional rights. *Id.* at 90. Plaintiff asserted that Betancourt was liable because of inadequate recruiting, training, and supervision of his officer. *See id.* The issue addressed in *Betancourt* was whether the plaintiff had introduced evidence to create a genuine issue of material fact whether Betancourt had violated the plaintiff's constitutional rights. *See id.* at 91.

The court held that the plaintiff had failed to introduce evidence sufficient to show callous or reckless indifference to the constitutional rights of the plaintiff based upon Betancourt's recruitment and training policies. The court based its conclusion on the fact that the training program on its face did not reflect a conscious policy to train inadequately and because **plaintiff produced no evidence showing;** (1) that Betancourt actually knew there were any problems with the training program, (2) that Betancourt should have known there were training problems to

---

**6.** The plaintiffs argue that Chief Forster is charged with the overall operation of the Topeka Police Department, but do not explain how that fact should change the court's analysis. Supervisory liability may not be predicated upon respondeat superior or vicarious liability.

which he was indifferent, (3) that the training program violated a legally mandated standard, (4) that the training practices were inferior compared to standards of the profession, and no evidence (5) that there were any previous problems with inadequate training of other officers. Finally the court noted that although plaintiff's expert stated that officers were not "adequately trained," he did not offer the opinion that the training constituted callous or reckless indifference. *See id.* at 92–93.

The court similarly held that Betancourt's supervision of the officer was not constitutionally inadequate. Although five complaints had been filed against the officer at issue, none of the incidents put Betancourt on notice that the officer's behavior was likely to result in constitutional deprivations to citizens. Therefore, a failure to sanction because of the complaints did not show indifference. Further, plaintiff's expert's opinion indicated that Betancourt was negligent and ineffective in his supervision, not that there was deliberate indifference. *See id.* at 93–94.

This court finds the *Betancourt* decision instructive and compelling. Plaintiffs would like the court to infer liability. However, in these circumstances it is not manifest that Chief Forster's conduct in supervising and training Cpl. Thomas was likely to result in constitutional deprivations.

Plaintiffs identify six incidents, other than the one at issue, in which officers of the Topeka Police Department used deadly force against persons that the review board ruled justified, and the chief ratified, often within twenty-four hours. However, at least one of the incidents occurred before defendant Forster became chief, and one of the incidents occurred after the incident at issue. Plaintiffs present evidence that the use of force was ruled justified in at least some of the incidents before the related criminal investigation was complete, but point to no evidence that was missed as a consequence of that fact which should have changed the result of the review. Plaintiffs present evidence

that the reviews did not include interviews with the arrestees involved in at least some of the incidents, but do not show why an interview with such an interested party is required or even helpful. Plaintiffs present evidence that in at least some of the incidents, police officers double or triple tapped when firing their weapons, but admit that "no standard exists for multiple shots to be fired in response to a perceived threat." (Pls.' Resp. to City's Mot., ¶ 52 at 17). Plaintiffs do not present evidence from any of the incidents that the officer involved fired after the threat ceased. Plaintiffs allege without citation that "[t]he T.P.D. [sic, presumably the Topeka Police Department] is training their officers in violation of the departments (sic) own 'Use of Force Policy'" (Pls.' Resp. to City's Mot., ¶ 55 at 17) (end punctuation missing in original). The plaintiffs allege that the Deputy Chief has questioned use of force by police officers, but the portion of the record cited does not support that assertion. The citation to **Chief** Forster's memo dated September 23, 1998, indicates that over a year after the incident at issue, the **chief** expressed concern about training in the use of force when officers apparently fired at **unarmed** civilians for the second time in a short time. Finally, plaintiffs present evidence that there are no civilians or "independent persons" on the review board.

Plaintiffs point to no finding that the use of deadly force in any of those circumstances was excessive, or otherwise constituted a constitutional deprivation. Plaintiffs present no evidence of any complaints related to use of force or aggressive behavior by police officers' in general, or Cpl. Thomas's in particular. Plaintiffs present no evidence of court findings nor even suits related to the use of force by Topeka police officers. Plaintiffs do not allege that the department does not provide any training on excessive force, rather they allege inadequate training. Were the court to hold that these circumstances are sufficient to establish deliberate indifference to the constitutional rights of citizens without knowledge or notice of excessive

force, the court would eviscerate the qualified immunity doctrine in any case involving deadly force.

As in *Betancourt*, the plaintiffs here present no evidence that the chief had actual knowledge of a training problem, no evidence the chief should have known there was a training problem, no evidence that the training program was inadequate on its face, no evidence that the program violated a mandatory legal standard, no evidence that the training program was inferior to the standards of the profession, no evidence that there were previous training problems relating to the use of **excessive** force, and no expert opinion that the training program exhibits a deliberate indifference to the rights of citizens. Plaintiffs present no evidence that Chief Forster violated the decedent's clearly established constitutional rights by inadequately training Cpl. Thomas.

■ By a similar analysis, the court finds that the plaintiffs have presented no evidence that defendant Chief Forster's supervision and discipline of Cpl. Thomas exhibits a deliberate indifference to the rights of citizens. Plaintiffs present no evidence that the chief knew that Cpl. Thomas's behavior was likely to result in constitutional deprivations. Plaintiffs present no evidence of prior use of **excessive** force by Cpl. Thomas and no evidence of any complaints about Cpl. Thomas. Plaintiffs do not identify any aspect of Cpl. Thomas's prior use of deadly force, other than the mere fact of such use, which should have alerted the chief to a problem. Plaintiffs have failed to present evidence that Chief Forster violated the decedent's clearly established constitutional right by inadequate discipline or supervision of Cpl. Thomas. Therefore, Chief Forster is entitled to qualified immunity on the plaintiffs' § 1983 claims.

## VII. Section 1983 Claims Against the City and the Officers in Their Official Capacity

The plaintiffs have presented no evidence to establish any Fourth Amendment violations, no evidence to establish an excessive force violation by any officer other than Cpl. Thomas, and no evidence of supervisory liability of defendant Sgt. Listrom. Therefore, as to those claims, there is no underlying constitutional violation and the city may not be held liable. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Apodaca v. Rio Arriba County Sheriff's Dep't*, 905 F.2d 1445, 1447–48 (10th Cir. 1990).

Plaintiffs, however, allege liability against the individual defendants and the city asserting a policy of allowing the use of excessive force by inadequate training and discipline of defendant Cpl. Thomas. Suit against an official in his official capacity is the same as a suit against the city. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, the analysis of this section applies equally to the plaintiffs' claims against the city and the individual defendants, and the court will use "defendants," "chief," and "city" interchangeably in this section.

### A. Standard for Municipal Liability

■ A city may not be held liable under § 1983 for the acts of its employees or agents merely upon a theory of respondeat superior. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court has stated two required elements to establish municipal liability: (1) the existence of a municipal policy or custom, and (2) a direct causal link between the policy or custom and the deprivation alleged. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ The Tenth Circuit has provided a four-part test to determine municipal liability under § 1983 when inadequate training in the use of force is the alleged basis:

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the police come into contact." [ ] *Canton* [ ] 489 U.S. [at] 388[ ], 109 S.Ct. 1197. To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee,* 119 F.3d 837, 841–42 (10th Cir.1997) (*citing Zuchel v. City and County of Denver,* 997 F.2d 730, 734–35 (10th Cir.1993) *and Canton* 489 U.S. at 389–91, 109 S.Ct. 1197).

### B. Discussion

With regard to the first requirement, this court has found a question of fact precluding determination as a matter of law whether defendant Cpl. Thomas exceeded constitutional limits on the use of force. Therefore, the court assumes for purposes of summary judgment that plaintiffs have met that requirement. The second requirement is met in that defendants do not, and likely could not, argue that use of a "no-knock" entry in the execution of a search warrant does not constitute a usual and recurring situation with which officers of the police department must deal.

Plaintiffs' claims of municipal liability fail because plaintiffs have not presented evidence to establish that the alleged inadequate training demonstrates a deliberate indifference toward persons with whom the police officers come into contact. The city has provided evidence that it has a deadly force training program and that Cpl. Thomas has participated in the program. Plaintiffs do not allege that

no program exists or that the program is defective on its face.

The analysis with regard to deliberate indifference in the court's consideration of the constitutional claims against defendant Chief Forster in his individual capacity applies with equal force here and will not be repeated. Plaintiffs fail to present evidence from which the court might infer that any of the prior deadly force incidents demonstrates the use of **excessive** force or that such use was brought to the attention of the city or was so egregious or widespread that the city should have known it was occurring. Without evidence of complaints, suits, mandatory legal standards, standards within the profession, or expert testimony that the city's training program is so defective that "the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need," *Canton,* 489 U.S. at 390 n. 10, 109 S.Ct. 1197, no rational fact-finder could find deliberate indifference on the part of the city toward persons with whom the officers come into contact.

Plaintiffs argue that the city's "policy" for the review board to rule within twenty-four hours of an incident that the use of deadly force is justified, and for the chief to ratify the ruling, demonstrates deliberate indifference. Plaintiffs argue that the board procedure was a ruse—in essence a cover-up for constitutional deprivations. The same analysis applies to that argument. Plaintiffs point to no evidence that any prior incident of the use of force was, in fact, **constitutionally excessive.** Plaintiffs present no evidence of a mandatory legal standard or standard within the profession which has been violated by the city. They provide no evidence that the city, in fact, knew that constitutional deprivations had taken place and deliberately ignored the facts. The mere existence of incidents in which deadly force was used by a police department, and in which the department ruled the incidents justified, does not justi-

fy an inference that a constitutional deprivation has occurred.

■ Finally, with reference to allegations of deliberate indifference by the city for failure to discipline Cpl. Thomas, the plaintiffs have presented **no** evidence that Cpl. Thomas has ever had a complaint against him, a disciplinary infraction, or a prior incident involving use of **constitutionally excessive** force. Without such evidence, it would be impossible to find that the city failed to discipline Cpl. Thomas, much less that such failure constitutes deliberate indifference by the city toward its residents.

The court finds as a matter of law that plaintiffs have presented no evidence from which a rational fact finder could find that the city has shown deliberate indifference toward persons with whom Cpl. Thomas comes into contact. Therefore, plaintiffs' § 1983 claims against the city and the individual defendants in their official capacities are dismissed with prejudice.

## VIII. State Law Claims

### A. Kansas Tort Claims Act (KTCA)

Defendants argue that they have no liability pursuant to the KTCA. The KTCA provides a presumptive rule of liability of government entities and their employees for the negligent or wrongful acts of the employees. *See* Kan.Stat.Ann. § 75–6103(a) (1997); *Moran v. State,* 267 Kan. 583, 593, 985 P.2d 127, 134–35 (1999). The statute provides immunity for government entities and their employees under certain circumstances, including; (1) enforcement of a law, (2) performance of a discretionary function or duty, (3) a claim against an officer where the officer is immune from suit, and (4) the method of providing police protection. *See* Kan.Stat.Ann. § 75–6104(c, e, i, n) (1999 Supp.).

The Kansas Supreme Court has addressed the application of the discretionary function and police protection exceptions. The police protection exception is addressed to such matters as the number of police officers assigned to an area, or the number and type of vehicles used by the

department. It does not provide immunity for every aspect of negligent police department operations. *See Gragg v. Wichita State Univ.,* 261 Kan. 1037, 1060, 934 P.2d 121, 137 (1997). "Should firemen negligently go to the wrong house and chop a hole in the roof thereof, we do not believe the city has immunity therefor on the basis the negligent act was a part of the method of fire protection." *Id.*

■ Referring to the discretionary function exception, the Kansas Supreme Court held that the governmental entity or employee does not have discretion to violate a legal duty and thereby avoid liability. *See Moran,* 267 Kan. at 597, 985 P.2d at 136. "Only negligent or wrongful acts or omissions of employees are excepted from liability ... while acts or omissions involving more than the lack of ordinary care and diligence are not." *Id.* at 596, 985 P.2d at 136. Where a police officer's use of force is excessive rather than merely negligent, the KTCA does not provide a shield to liability. *See Sevier v. City of Lawrence,* 853 F.Supp. 1360, 1370 (D.Kan. 1994); *Caplinger v. Carter,* 9 Kan.App.2d 287, 294–95, 676 P.2d 1300, 1306–07 (1984).

■ Applying the law of Kansas, the court finds that the defendant Chief Forster is immunized from liability under the KTCA § 75–6104(i) because he has qualified immunity from suit pursuant to federal law under 42 U.S.C. § 1983. The KTCA exception to liability for performing a discretionary function applies to Sgt. Listrom and to all of the individual non-supervisory defendants, except Cpl. Thomas, because the court found that there was no violation of a legal duty by any of those defendants. Plaintiffs have not presented evidence that the actions of any of those defendants involved the lack of ordinary care and diligence, the actions certainly did not involve more that the lack of ordinary care and diligence. Because the court has found a question of fact whether Cpl. Thomas's use of force was excessive, the court cannot find at this time that the KTCA provides immunity for the city or

Cpl. Thomas as to his acts so far as his use of force may have been excessive. Therefore, the court grants the defendants' motions for summary judgment as to the state law claims against all defendants except Cpl. Thomas and the city.

### B. Wrongful Death and Negligent Infliction of Emotional Distress

Plaintiffs present evidence that the shots fired by Cpl. Thomas were the cause of decedent's death. Because there is a question of fact whether the force used was excessive, and thus wrongful, the court may not grant defendants' motion for summary judgment on the wrongful death claim as it relates to the city and Cpl. Thomas.

■ Defendants argue that Kansas law will not recognize a claim of negligent infliction of emotional distress in the circumstances of this case because the plaintiffs did not receive physical injury or impact. As plaintiffs argue, a claim for emotional distress may be allowed without physical impact or injury to the plaintiffs if the defendant's conduct was wanton. *See Bowman v. Doherty*, 235 Kan. 870, 876–77, 686 P.2d 112, 118–19 (1984); *but compare Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1534–36 (D.Kan.1990). If the jury finds that Cpl. Thomas used excessive force by shooting the decedent after he no longer posed a threat, it could also find that Cpl. Thomas's conduct was wanton. Therefore, the defendants' motion for summary judgment is denied as it relates to plaintiffs' emotional distress claim against Cpl. Thomas and the city.

### IX. Remaining Matters

The court finds that the "Notice of Claim Against Officer Dave Thomas and City of Topeka Pursuant to K.S.A. 12–105(b)" substantially complies with the requirements of the statute in so far as it relates to the city, Cpl. Thomas, and the plaintiffs in this case. The notice has five numbered paragraphs addressed to each of the elements required by the statute. Although the notice does not list the names of the minor children, it refers to the "Estate of David Fuentes," and "Loss of life and support of a parent, post traumatic stress syndrome on the minor children." There is no question that the city and Cpl. Thomas were given notice as required by statute that the minor children of the decedent were making a claim.

The KTCA provides that governmental entities shall not be liable for punitive damages and their employees may only be liable for punitive damages upon a showing of actual malice. *See* Kan.Stat.Ann. § 75–6105(c). If the jury finds that Cpl. Thomas used excessive force by firing the third shot after the decedent had ceased to be a threat, they may find actual malice. Determination of whether punitive damages may be allowed against Cpl. Thomas as a matter of law may be better made after the facts of the case have been developed at trial. Therefore, defendants' motion for summary judgment as to punitive damages is granted as it relates to any claim against the city and denied as it relates to any claim against Cpl. Thomas.

### X. Order

**IT IS THEREFORE ORDERED** that the motion for summary judgment of defendant Randy Listrom (Doc. 93) is granted.

**IT IS FURTHER ORDERED** that the motion for summary judgment of defendant Dean Forster (Doc. 85) is granted.

**IT IS FURTHER ORDERED** that the motion for summary judgment of the city (Doc. 95) is granted in part and denied in part. All claims pursuant to 42 U.S.C. § 1983 are dismissed with prejudice as they relate to **all** defendants **except** for the excessive force claims made by the estate of the decedent against defendant Dave Thomas. All state law claims are dismissed with prejudice as they relate to **all** defendants **except** defendants Dave Thomas and the City of Topeka. All claims for

punitive damages against the City of Topeka are dismissed with prejudice.